UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
NATHAN COLEMAN,                                 :

                Petitioner,            :

        -against-                        :       **REPORT AND RECOMMENDATION**

ADA PEREZ,                                            :       14-CV-7201 (AJN) (KNF)

                Respondent.           :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ALISON J. NATHAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Nathan Coleman ("Coleman"), proceeding pro se, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his: (1) trial counsel rendered ineffective assistance to him; (2) due process right was violated, because no probable cause existed to arrest him; and (3) rights to a fair trial and to confront the witnesses against him were violated, by the use of an "unduly suggestive identification procedure." The respondent opposes the petition.

## BACKGROUND

On October 11, 2008, around 3: 40 a.m., Coleman followed his brother, David Williams ("Williams"), into the vestibule of an apartment building, located at 400 Manhattan Avenue in New York County. The two men argued. When Williams walked to the elevator, Coleman shot him in the leg and exited the building. A New York County grand jury charged Coleman with first-degree assault and second-degree criminal possession of a weapon. Coleman proceeded to trial.

A pretrial suppression hearing, pursuant to Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961) and Dunaway v. New York, 442 U.S. 200, 99 S. Ct. 2248 (1979), was held to determine whether: (1) to suppress certain evidence; and (2) the police had probable cause to arrest Coleman. Detectives Jack Franzitta ("Franzitta") and Garth Ashman ("Ashman") testified at the hearing. Franzitta testified that he interviewed Williams on the morning of the shooting incident and after Williams was released from the hospital. Williams identified himself to the detective as David Webb, but Franzitta later determined that Williams also used the name Dwan Williams. Williams was agitated during the interview and refused to answer questions. Williams informed Franzitta that he: (a) had been shot during a robbery attempt; (b) did not see the robber; and (c) could not describe the robber. Franzitta testified that he and other detectives visited the crime scene, canvassed the building and observed blood spatter leading up to an apartment, occupied by Williams's ex-girlfriend. Franzitta found blood all over the bathroom sink. The police recovered "a bullet projectile" from the hallway wall in the lobby of the building and located two surveillance cameras on the building's exterior and vestibule area.

The surveillance videotape showed that the victim walked into the vestibule area and hit the buzzer to go through the door into the lobby. Franzitta testified that the videotape also showed a second man walk into the vestibule and engage "in some sort of verbal confrontation" with the victim, after which it showed the second man "pull a firearm from his waistband area, show it to the victim, and then the victim walks through the second door leading into [the] lobby and then the suspects [sic] follows right behind him through the same door into the lobby area." Franzitta testified that "within 30 seconds to a minute later, that same suspect we seen [sic] originally with the firearm walking out, right out of the building the same way he came in." According to Franzitta, based on the surveillance videotape, he and his partner, Detective Mark

2

Worthington ("Worthington"), concluded that no reason existed for Williams's inability to describe the shooting suspect.

Franzitta testified that he created a wanted poster depicting the suspect and Williams by using still photographs from the surveillance videotape. Franzitta stated that, while he and Worthington were distributing the wanted poster at the crime scene and at 130 West 142nd Street, where they believed Williams was residing, two individuals identified one of the men in the poster as Coleman and the other as his brother, Williams, and stated that Coleman lived in the building at 130 West 142nd Street. After learning Coleman's name, Franzitta and Worthington found Coleman's picture in a police computer system, compared it with the suspect in the surveillance videotape and concluded that it was the same person depicted in the wanted poster. Subsequently, they sent a wanted card to the police warrant apprehension team, identifying Coleman as a wanted suspect. Franzitta testified that Coleman was arrested and brought to a police precinct where he spent at least six or seven hours with Franzitta during the processing of his arrest. During that time, Franzitta had a good look at Coleman's face and reviewed the surveillance videotape again, concluding that Coleman was the shooter.

Ashman testified that he was the detective from the warrant apprehension team who arrested Coleman, based on the wanted card and Coleman's photograph. Although the wanted card did not indicate Coleman's address, Ashman learned about his address "[f]rom previous investigations." Coleman presented no evidence at the hearing. The court found that the police had probable cause to believe that Coleman had committed the shooting and denied Coleman's suppression motion.

At trial, Worthington testified that, as he and Franzitta were posting the wanted posters, he spoke with "individuals in connection with the investigations and the poster" and learned "the

3

name of a possible suspect in this shooting case," Coleman. This information did not come from any eyewitness to the shooting. Over defense objections, Worthington and Franzitta testified that, subsequent to Coleman's arrest, they reviewed the surveillance videotape and recognized Coleman as the person who was with Williams in the vestibule of the building where Williams was shot. They obtained a search warrant for Coleman's residence, where they found a .38 caliber "live" revolver cartridge.

Novella Loper ("Loper"), Coleman's and Williams's aunt testified that Coleman and Williams are the persons in the surveillance videotape. On cross-examination, Loper testified that the surveillance videotape was "quite grainy" and that "the second person looks like" Coleman, but she was "not 100 percent sure." A cartridge recovered from Coleman's residence matched a bullet recovered from the crime scene. Cellular telephone records established that Coleman was in the vicinity of the crime scene when the shooting occurred and exchanged multiple telephone calls with the victim prior to the shooting, but none after the shooting. Coleman presented no evidence at the trial.

At the close of the evidence, the court dismissed the first-degree assault charge and submitted the second-degree assault charge to the jury. The jury convicted Coleman for second-degree assault and second-degree criminal possession of a weapon. He was sentenced, as a second-violent-felony offender to concurrent determinate terms of imprisonment of six years on the assault charge and 11 years on the weapon charge, to be followed by five years of post-release supervision.

The New York State Supreme Court, Appellate Division, First Department affirmed the judgment of conviction. See People v. Coleman, 78 A.D.3d 457, 910 N.Y.S.2d 69 (App. Div. 1st Dep't 2010). The Appellate Division stated that the issue was "whether the trial court

committed reversible error by admitting testimony by two police officers and another witness who identified defendant on a surveillance videotape." Id. at 457, 910 N.Y.S.2d at 70. The Appellate Division concluded that "neither the police officers' nor defendant's aunt's testimony should have been admitted" because: (i) "[a] lay witness may offer an opinion about the identity of a person captured in a photograph or videotape to aid the jury in cases where 'the witness is more likely to correctly identify the [person] . . . than is the jury'"; and (ii) "the people never claimed that defendant had altered his appearance, and no other circumstance suggested that the jury, which had ample opportunity to view defendant, would be any less able than the witnesses to determine whether he was seen in the videotape." Id. at 458, 910 N.Y.S.2d at 70. However, the Appellate Division determined that the error was harmless, explaining:

> The court mitigated its effect by instructing the jury, both after the opinion testimony and during the final charge, that it was free to accept or reject the opinions and that the ultimate determination as to who was seen in the videotape was the jury's alone. The video and the still photographs were sufficient for the jury to make an independent identification of the defendant, who was present during the entire trial. The videotape, together with the other extensive circumstantial evidence of defendant's guilt, amply supported the conviction.
>
> Id. at 459, 910 N.Y.S.2d at 71.

Coleman made an application for a writ of error coram nobis, arguing that his appellate counsel rendered ineffective assistance to him when she failed to make an ineffective assistance of trial counsel claim. According to Coleman, his appellate counsel should have argued that his trial counsel failed to: (a) object to identification evidence at the pretrial hearing; (b) prevent a violation of his right to confront witnesses by allowing Franzitta to testify about his decision to focus his investigation on Coleman, after the detective's encounter with two individuals who did not testify at the trial, which testimony created the impression that the two individuals had identified Coleman as the perpetrator; (c) make any motion in connection with the prosecution's

5

failure to file notice under New York Criminal Procedure Law ("CPL") § 710.30 that it intends to refer at trial to the two witnesses who identified Coleman from the wanted posters; (d) act when the court "erred in allowing statements to be admitted as evidence in chief at trial via the adoptio[n] of detectives MAPP/DUNAWAY hearing testimony"; and (e) make "motions for hearings on admissibility of evidence." The court denied Coleman's application for the writ, summarily. Coleman did not apply to the New York Court of Appeals for leave to appeal the denial of his coram nobis application.

Coleman made a CPL § 440.10 motion to vacate the judgment of conviction, asserting that his trial counsel rendered ineffective assistance to him when he failed "to object to the people's introduction of inadmissible evidence and improper statements" at the pretrial hearing. The court denied the motion as procedurally barred, pursuant to CPL § 440.10(2)(c), because the issues Coleman raised could have been raised on appeal. The court also rejected Coleman's claims on the merits. The Appellate Division denied leave to appeal the denial of Coleman's § 440.10 motion. This petition followed.

### PETITIONER'S CONTENTIONS

Coleman asserts his trial counsel rendered ineffective assistance to him as follows:

Trial counsel failed to challenge identification testimony, or request the proper hearings to correct the prejudice effect. During pretrial counsel abandoned cross examination and failed to preserve objections even where counsel cross examination was restricted. Counsel theory for defense was incredible, and dubious rendering defendant no defense at all, at [sic] trial counsel did not cross examine the detective about the sole issue, which was the identification of the defendant. Trial counsel did not deny, dispute or challenge any of the evidence against defendant. Trial counsel was remiss in his duty as a defender. During MAPP/DUNAWAY hearing detective Franzitta mad[e] an in-court-identification of the defendant based on a previous out-of-court identification and petitioner trial counsel failed to object to this evidence. Trial counsel did object to testimony from Franzitta during trial to same testimony [sic].

Coleman contends his due process right was violated because probable cause for his arrest did not exist. He maintains that an "unduly suggestive identification procedure" was used, violating his constitutional rights to a fair trial and to confront witnesses against him. According to Coleman,

> [d]etectives used a combination of a poster with the caption "WANTED FOR SHOOTING" and an [sic] previous arrest photo to make an out of court identification. Detectives were allowed to bolster a previous out of court identification of defendant without witness testifying at trial. Detectives were allowed to make an in court identification of defendant with out [sic] providing an independent source. Defendant was denied the opportunity to confront the person that initially identified him as the shooter . . . . Defendant was the only person compared to the individual in the surveillance video. Detectives testified that they confirmed the identification of the defendant as he sat in a cell with blood on his pants, and compared him to the previous arrest photo. Upon every viewing of the defendant he was both the only person being viewed and the pictures were highly suggestive.

## RESPONDENT'S CONTENTIONS

The respondent contends that Coleman's ineffective assistance of trial counsel claim, based on identification testimony, is procedurally barred because Coleman asserted, in his CPL § 440.10 motion, that his trial counsel failed to challenge Franzitta's identification testimony at the pretrial hearing, which motion was denied as procedurally barred; he did not assert, in that motion, the other grounds he now asserts. According to the respondent, Coleman blames his appellate counsel for failing to raise this claim on appeal, but that failure cannot serve as cause to excuse Coleman's default because, assuming Coleman asserted in the state court all the grounds he now asserts: (a) he failed to apply to the Court of Appeals for leave to appeal the denial of his application for a writ of error coram nobis and is barred from doing so now; (b) his petition for a writ of habeas corpus does not include an independent ineffective assistance of appellate counsel claim; and (c) "the underlying identification claim is meritless." The respondent asserts that

7

Coleman's other grounds for his ineffective assistance of trial counsel claim are unexhausted, procedurally defaulted and meritless, namely, "that counsel erred by not challenging Detective Franzitta's identification testimony at the hearing, not requesting 'the proper hearings to correct the prejudic[ial] effect,'" and by "failing to cross-examine witnesses or preserve objections at the hearing." According to the respondent, Coleman's claim that counsel failed to assert a credible defense theory or challenge any evidence against him is belied by the record. The respondent contends that Coleman's "counsel zealously opposed admission of the identification testimony by Detectives Franzitta and Worthington and Ms. Loper."

The respondent asserts that Coleman's lack of probable cause claim is not cognizable in this proceeding, unexhausted, procedurally defaulted and meritless. Coleman was granted a pre-trial hearing to determine the existence of probable cause for his arrest and he failed to pursue that claim on direct appeal. The respondent contends that the ineffective assistance of counsel claim cannot serve as cause to excuse a procedural default unless the claim has been exhausted fully in the state court, and Coleman failed to: (a) assert, in his <u>coram nobis</u> application, that appellate counsel should have raised a probable cause claim on direct appeal; and (b) file an application to the Court of Appeals from the denial of his application for a writ of error <u>coram nobis</u>. Moreover, the instant petition does not assert an independent claim for ineffective assistance of appellate counsel and any such claim is meritless because Coleman cannot establish that his appellate counsel omitted significant issues while pursuing significantly weaker issues or that a reasonable probability exists that his proposed probable cause claim would have succeeded. Since the probable cause to arrest claim is meritless, the default of that claim could not result in any prejudice, and Coleman proffered no evidence that would establish that he is innocent.

8

The respondent contends that Coleman's claim that an "unduly suggestive identification procedure" was used and his rights to a fair trial and confrontation were violated is confusing, unexhausted, procedurally barred and meritless. Moreover, the Appellate Division's decision on his appeal was based on New York common law, and Coleman failed to make citation to any "Supreme Court decision holding that the admission of the relevant testimony here was fundamentally unfair."

## DISCUSSION

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> 28 U.S.C. § 2254(b)(1).

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b)(3)(c).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.
>
> Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).

To establish cause for a procedural default, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to

9

foreclose review of a federal claim." Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)). "[A]dequacy 'is itself a federal question.'" Id. at 375, 122 S. Ct. at 885.

"There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Id. at 376, 122 S. Ct. at 885. To determine if a case falls within the small category of exceptional cases, courts should consider whether: (1) perfect compliance with the state procedural rule would have changed the trial court's decision; (2) state caselaw directs flawless compliance with the procedural rule at issue in the circumstance presented in a particular case; and (3) the petitioner substantially complied with the state procedural rule. See id. at 381-82, 122 S. Ct. at 888-89.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from

10

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*Claim 1: Ineffective Assistance of Trial Counsel*

Coleman did not raise his ineffective assistance of trial counsel claim on appeal, and his CPL § 440.10 motion asserting ineffective assistance of trial counsel was denied as procedurally barred, pursuant to CPL § 440.10(2)(c), because the issues Coleman raised in the motion could have been raised on appeal. The Court finds that CPL § 440.10(2)(c) is a state-law ground independent of the federal question.

The purpose of CPL §§ 440.10(2)(b) and 440.10(2)(c) is to prevent them "from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal (CPL 440.10[2][b]) or could readily have raised it on appeal but failed to do so (CPL 440.10[2][c])." People v. Cooks, 67 N.Y.2d 100, 103, 500 N.Y.S.2d 503, 505 (1986) (internal citations omitted). "Generally, the ineffectiveness of counsel is not demonstrable on the main record," and "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10." People v. Brown, 45 N.Y.2d 852, 853-54, 410 N.Y.S.2d 287, 287 (1978) (citation omitted).

Although generally not raising an ineffective assistance of counsel claim on appeal does not appear to violate firmly established and regularly followed state rules, because of the preference of New York courts that the effectiveness of counsel be challenged by a collateral or postconviction proceeding under CPL § 440.10, the alleged error forming the basis of Coleman's

11

attack on his trial counsel's performance is demonstrable in the trial record. Accordingly, the Court finds that CPL § 440.10(2)(c) is a state-law ground adequate to support the state court's decision.

Coleman contends that the cause for his procedural default is that his appellate counsel informed him that "the issue of trials [sic] counsel performance would not be raised due to a discussion between appellate counsel and trial counsel," because "no court would find it in defendant's favor." Coleman does not assert an ineffective assistance of appellate counsel claim in this proceeding and he concedes, by his contention, that his appellate counsel's determination not to raise the issue of ineffective assistance of trial counsel was strategic. Therefore, the appellate counsel's decision not to raise the ineffective assistance of trial counsel on appeal cannot serve as cause to excuse Coleman's procedural default. Coleman does not assert that he is actually innocent or that failure to consider this claim will result in a fundamental miscarriage of justice. Accordingly, Coleman's procedural default bars federal habeas review of his ineffective assistance of trial counsel claim.

*Claim 2: Lack of Probable Cause to Arrest*

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A state prisoner cannot obtain federal habeas corpus relief on a Fourth Amendment claim if he had a full and fair opportunity to litigate that claim in state court. See Stone v. Powell, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046 (1976).

New York's CPL Article 710 provides a procedure for litigating Fourth Amendment claims, and Coleman had a full and fair opportunity at his pretrial hearing to litigate his Fourth Amendment claim that no probable cause existed to arrest him. Accordingly, Coleman cannot obtain relief, through this proceeding, based on his Fourth Amendment claim.

*Claim 3: Fair Trial and Confrontation Clause*

Coleman contends, erroneously, that he raised his claim, that an "unduly suggestive identification procedures [sic] [was] used that violated constitutional rights to a fair trial and to confront" witnesses against him, in his CPL § 440.10 motion. The state-court record shows that Coleman did not raise this claim on appeal or in his CPL § 440.10 motion. Coleman's claim may be deemed exhausted because no procedure is available to raise the claim now in the state court. See 28 U.S.C. § 2254(b)(3)(c). Thus, the claim is procedurally defaulted, unless Coleman can demonstrate: (i) cause for his default and actual prejudice as a result of the alleged violation of federal law; or (ii) that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. Coleman failed to show that some objective factor external to the defense impeded his efforts to raise the claim in the state court. See Murray, 477 U.S. at 488, 106 S. Ct. at 2645. Coleman does not assert that he is actually innocent or that failure to consider this claim will result in a fundamental miscarriage of justice. Accordingly, Coleman's procedural default bars federal habeas corpus review of his fair trial and confrontation rights violation claim.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan, 40 Centre Street, Room 2102, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Nathan. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
   September 23, 2015

Respectfully submitted,

*Kevin Guatnaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE